IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2018

## TIMOTHY CLAYTON THOMPSON v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
No. 90379    Bobby Ray McGee, Judge

___

### No. E2018-00403-CCA-R3-PC

___

The Petitioner, Timothy Clayton Thompson, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends (1) that his guilty pleas were not knowingly and voluntarily entered because of the ineffective assistance of trial counsel; and (2) that trial counsel failed to adequately prepare for the Petitioner's sentencing hearing. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Bailey M. Harned, Knoxville, Tennessee, for the appellant, Timothy Clayton Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Kevin James Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

In 2002, the Petitioner pled guilty to one count of especially aggravated kidnapping and one count of aggravated rape without a sentencing recommendation from the State. State v. Timothy Clayton Thompson, No. E2002-01710-CCA-R3-CD, 2003 WL 21920247, at *1 (Tenn. Crim. App. Aug. 12, 2003), perm. app. denied (Tenn. May 16, 2012). Following a sentencing hearing, the trial court imposed sentences of twenty-two years for each conviction and ordered them to be served consecutively, for a total effective sentence of forty-four years. Id. This court affirmed the trial court's

sentencing decision on direct appeal. Id. On May 16, 2012, our supreme court declined to review this court's opinion.

The Petitioner was indicted for one count of especially aggravated kidnapping, two counts of aggravated kidnapping, and four counts of aggravated rape. At the start of the guilty plea submission hearing, the prosecutor announced that the Petitioner agreed to plead guilty to especially aggravated kidnapping and one count of aggravated rape. The prosecutor then stated that she would "not pursue the other" charges. Instead, they would "merge" into the especially aggravated kidnapping and aggravated rape convictions. The prosecutor noted that the Petitioner was entering a "blind plea" and that the State would contest the Petitioner's offender classification and "probably" ask the trial court at the sentencing hearing to impose consecutive sentences.

The trial court then informed the Petitioner that he was "entering a blind plea." Because the State was contesting the Petitioner's offender classification, the trial court informed the Petitioner that he faced a range of punishment between fifteen and sixty years for the two Class A felonies. The Petitioner responded that he understood. The trial court also informed the Petitioner that it would decide at the sentencing hearing the length of his sentences and whether they would be served consecutively and that there was "no promise of that today." The Petitioner again responded that he understood. The Petitioner stated that he had reviewed the plea agreement forms with trial counsel, that he was "[m]ore than satisfied" with trial counsel's representation, and that he was freely pleading guilty. The trial court concluded that the Petitioner had voluntarily and knowingly entered his guilty pleas.

As a factual background for the Petitioner's guilty pleas, the State provided that in April 2000, the victim was at a car wash when the Petitioner came up behind her, hit her on the head and back, and "forcefully placed her in his van." The Petitioner "pulled out a knife, placed it to [the victim's] side[,] and told her that he didn't want to hurt her and for her to cooperate." The Petitioner bound the victim's hands and feet. The Petitioner took off the victim's pants and "engage[d] in sexual activity with her." The Petitioner then drove around with the victim. The victim "engaged in a conversation with the [Petitioner]." The Petitioner told the victim his name. Additionally, the van he was driving belonged to his employer and had the name and phone number of the Petitioner's employer on the side of the van. The Petitioner eventually returned the victim to her car, and she contacted the police. The Petitioner was arrested and gave a statement to the police "where he admitted to all of these allegations."

At the conclusion of the guilty plea submission hearing, the Petitioner made the following statement:

Your Honor, first of all, I'd like to apologize to [the victim] . . . for--I know that she don't [sic] want to accept an apology. But she did nothing wrong. I knew what I was doing, and I didn't even try to cover up the fact. I told everybody who I was. I'm sorry. That's all I'd like to say, your Honor.

At the Petitioner's sentencing hearing, the State requested that the Petitioner's presentence report be admitted into evidence. Trial counsel noted two errors in the presentence report, including the fact that it incorrectly listed a conviction that the Petitioner did not have. The trial court admitted the presentence report after noting trial counsel's corrections. The presentence report stated that the Petitioner had prior convictions in Florida for false imprisonment, sexual battery with a deadly weapon, and simple battery. The presentence report stated as follows about the Florida convictions:

The [Petitioner's] convictions in Florida in 1992 were the result of a similar kidnapping and rape of a female. On 02/02/92 he abducted a female at knife point from her vehicle after she had asked for directions. He took her to a secluded location, forced her to undress, forced her to [lie] on the ground and then had sexual intercourse with her. During this time, the [Petitioner] struck the victim in the head with the butt of his knife, and then choked her until she was unconscious. He then stood over the victim and masturbated until she regained consciousness. At that point, the [Petitioner] began having intercourse with the victim a second time, and continued until the act was completed. The [Petitioner] then drove the victim back to where he had picked her up. Refer to attached investigative narratives from the Longwood, FL Police Department.

The Florida police reports were attached to the presentence report.

The prosecutor argued for the Petitioner to be classified as a Range II, multiple offender and subject to a sentencing range of twenty-five to forty years based upon his Florida convictions. The prosecutor argued that the Petitioner's Florida conviction for false imprisonment should be treated like a conviction for especially aggravated kidnapping because it involved a deadly weapon, a knife. The prosecutor argued that both convictions could be counted in determining the Petitioner's offender classification despite having occurred within the same twenty-four hours because they both involved bodily injury.

In making these arguments, the prosecutor stated the following:

So what we are saying is, if you look at the presentence report, the addendum to the presentence report, there's a long narrative from the Longwood Police Department in Florida. It's showing how that he

-3-

abducted the victim in Florida by using a folding knife and put it to her ribs. He drove her around for about a half an hour. He took her clothes off. He wouldn't let her exit the vehicle, made her remove her clothes. He raped her. With the knife still to her ribs, he forced himself on her. He--at one time during this, he put his--he grabbed her throat and choked her. It goes on and on, Judge, about, on the second page, he took the knife eventually and hit --

At that point, defense counsel objected to "the attachment of officers' reports" and the prosecutor's "going into all of these details" because the prosecutor was "trying to certify hearsay." The trial court noted that the details of the Florida convictions had "been put in as a part of the presentence report." Trial counsel then objected "to it's inclusion in terms of the Court giving it weight." The prosecutor noted that the details of the Florida convictions had been included in the presentence report and were reliable hearsay. The prosecutor also noted that she had provided the Florida "court file" and police reports to trial counsel "in advance" of the sentencing hearing. The trial court and trial counsel discussed trial counsel's objection, and the trial court ultimately overruled it.

The victim testified that after placing her in the van and raping her, the Petitioner drove her around in his van for approximately two hours. The Petitioner talked to the victim and made no attempt to hide his identity. The victim testified that the Petitioner "initially" used a knife "to get [her] to pay attention to him." The victim also testified that she did not "remember seeing the knife until [the] investigator showed it to [her]." Trial counsel asked the victim if she felt the knife, and the victim responded that she did not because she had on "two layers of clothing." However, the victim testified that the knife "was pulled out" and pressed "against [her] side."

The Petitioner was called as a witness and testified about his background. The Petitioner testified that his father was an alcoholic and abusive. The Petitioner also testified that he was sexually abused by a relative when he was a child. The Petitioner discussed his work history and past relationships. The Petitioner stated that he knew the victim could identify him and that he would likely go to prison for what he had done, but he released her because he "couldn't hurt [any]body like that[,] . . . [s]he had already been through enough."

Trial counsel asked the Petitioner if they had discussed "the possibility of going to trial" and what he had instructed trial counsel to do. The Petitioner responded as follows: "Well, I knew that if I wanted to take it to trial that you would. You've been an excellent attorney. But I said no because I didn't want to put [the victim] through anymore than what she had already been through." The Petitioner testified that he pled guilty without a sentencing agreement for that reason. The Petitioner also testified that he had never rethought his "instructions to [trial counsel] of pleading" guilty.

-4-

On cross-examination, the Petitioner was asked why he had attacked the victim. The Petitioner responded that he did not know, "[i]t just happened." The prosecutor asked the Petitioner if he had used "a knife when [he] abducted" the victim. The Petitioner responded that he "had knife on [his] hip, and [he] told her [he] had one[,] but [he] never used it." The Petitioner believed that the victim had mistaken another tool in his van for a knife when she believed that she felt a knife pressed against her side.

The Petitioner admitted that he was on probation for his Florida convictions when he committed the instant offenses. The Petitioner was then asked about the facts of his Florida convictions. The Petitioner claimed that he had not choked the Florida victim or used a knife to get into that victim's car. The Petitioner asserted that the Florida victim had invited him into her car. However, the Petitioner admitted that he had a knife with him during the incident in Florida. The Petitioner also admitted that he had the knife "closed" in his hand as he beat the Florida victim. The Petitioner denied cutting the Florida victim with the knife, stating that he "just used it as a persuasion."

The State argued that the Petitioner was a Range II, multiple offender, that several enhancement factors applied, and that the trial court should impose consecutive sentences for a total effective sentence between fifty and eighty years. Trial counsel argued that the Petitioner's background and the fact that he released the victim were mitigating factors for the trial court to consider. Trial counsel also argued against all but one of the enhancement factors the State sought to apply. Trial counsel further argued that the Petitioner was a Range I, standard offender and for concurrent sentences.

At the outset of its sentencing decision, the trial court noted that the Petitioner's Florida convictions were "very similar" to the instant offenses and that was "of great concern to" it. The trial court also noted this incident was "very close to what happened before, which [was not] a help to [the Petitioner] at all." However, the trial court rejected the State's argument that the Petitioner was a Range II, multiple offender and classified him as a Range I, standard offender with a sentencing range of fifteen to twenty-five years for each conviction.[1] Thompson, 2003 WL 21920247, at *3.

The trial court considered the Petitioner's "remorse for the offense" and his release of the victim as a mitigating factor. Thompson, 2003 WL 21920247, at *3. The trial court also accepted the Petitioner's background and "steady employment history" as a mitigating factor, but "assigned this factor little weight." Id. "The trial court found several enhancement factors," including that the Petitioner committed the offenses to gratify his sexual pleasure and excitement, that he caused bodily injury to the victim and

---

[1] The transcript of the Petitioner's sentencing hearing contained in the appellate record is missing a page from the trial court's sentencing decision; therefore, we refer to this court's direct appeal opinion for the complete description of the trial court's sentencing decision.

had a prior felony conviction involving bodily injury to a victim, and that he committed the offenses while on probation. Id.

The trial court imposed sentences of twenty-two years for each of the convictions, elevated from the midrange of twenty years but less than the maximum of twenty-five years. Thompson, 2003 WL 21920247, at *3. The trial court then ordered the sentences to be served consecutively "finding that [the Petitioner] was a dangerous offender and had committed the offenses while on probation." Id. The Petitioner appealed his sentences to this court, challenging both the length of his sentences and their consecutive nature. Id. at *1. On August 12, 2003, this court affirmed the trial court's sentencing decision. Id.

On November 17, 2008, the Petitioner filed a pro se petition for post-conviction relief. The Petitioner was eventually granted a delayed appeal to the Tennessee Supreme Court of this court's direct appeal opinion. See Timothy Clayton Thompson v. State, No. E2008-02819-CCA-R3-PC, 2010 WL 1539744 (Tenn. Crim. App. Apr. 19, 2010). After our supreme court declined to review this court's direct appeal opinion, counsel was appointed to represent the Petitioner on his claims for post-conviction relief.

An amended petition was filed, alleging that the Petitioner's guilty pleas were not knowingly and voluntarily entered because trial counsel failed to investigate if "the victim was inconsistent regarding the presence of a knife during the commission of the crime." The Petitioner also alleged that trial counsel was ineffective for failing to prepare for the sentencing hearing as evidenced by trial counsel's not objecting to the inclusion of the Florida police reports in his presentence report prior to the hearing.

The Petitioner was the sole witness at the evidentiary hearing.[2] The Petitioner claimed that he met with trial counsel only four times prior to pleading guilty and that he "only met with [him] for about ten minutes before" the guilty plea submission hearing. According to the Petitioner, trial counsel never explained to him what he was charged with or reviewed the State's evidence with him. The Petitioner insisted that he told trial counsel that he did not have a knife during the attack and that he did not threaten the victim with a knife. The Petitioner asserted that he was not guilty of "what they charged" him with and that trial counsel "basically pleaded guilty for [him]."

The Petitioner admitted that he knew the victim had told the investigator that he used a knife during the attack. The Petitioner also admitted that he told the investigator that he had a knife on his side during the attack. However, the Petitioner claimed that he only said this so the investigator would stop questioning him and take him to a hospital. The Petitioner explained that he had been in the woods several days without food or

---

[2] Trial counsel died prior to the hearing.

water before his arrest. The Petitioner also admitted that he testified at the sentencing hearing that he had a knife on him during the attack. The Petitioner claimed that he had lied during the sentencing hearing because trial counsel had warned him that if he "didn't just agree," the trial court "would burn [him]."

The Petitioner claimed that trial counsel assured him his sentences would be between seventeen and twenty years and that the trial court would "run [them] concurrent." The Petitioner insisted that trial counsel never spoke to him about the possibility of consecutive sentences. The Petitioner also claimed that trial counsel passed him a note saying, "Relax [seventeen] or [twenty]," when he had a question during the guilty plea submission hearing. The Petitioner admitted that the trial court informed him at the guilty plea submission hearing that he could receive consecutive sentences, and he stated that he understood. The Petitioner claimed that trial counsel never prepared him to testify at the sentencing hearing.

The Petitioner believed that he deserved a total effective sentence between fifteen and twenty-five years. The Petitioner claimed that he would have insisted on going to trial if he had known trial counsel would not challenge the victim about the presence of a knife during the attack or had he known that he could receive consecutive sentences. However, the Petitioner admitted that he "didn't want to take [his case] to trial."

The post-conviction court orally denied the petition. The post-conviction court concluded that trial counsel was not ineffective for failing to investigate the presence of a knife during the attack. The post-conviction court found that the victim consistently testified that a knife was present and that the Petitioner had admitted that he had a knife with him to the investigator and at the sentencing hearing.

The post-conviction court also concluded that the Petitioner did not enter his guilty pleas without knowing that he could receive consecutive sentences. The post-conviction court found that it was explained "over and over again" that the Petitioner was entering a "blind plea" and that the Petitioner stated that he understood.

The post-conviction court further concluded that trial counsel was not ineffective for failing to object to the use of the Florida police reports at the sentencing hearing. The post-conviction court found that trial counsel was "caught by surprise" when the prosecutor started reading from the reports, but that he then "strenuously" objected to their use. The post-conviction court also noted that the prosecutor only read a portion of the reports, that she stopped after trial counsel's objection, and that the trial court sentenced the Petitioner from the bench without reading the reports.

## ANALYSIS

The Petitioner contends that his guilty pleas were not voluntarily and knowingly entered. The Petitioner argues that trial counsel was ineffective for failing to "look into whether . . . the knife was shown to or used against the victim in furtherance of the crime" and by assuring the Petitioner that he would receive a sentence between seventeen and twenty years if he pled guilty. The Petitioner also contends that trial counsel was ineffective for failing to adequately prepare for the sentencing hearing. The Petitioner argues that trial counsel failed to object to the inclusion of the Florida police reports in the presentence report prior to the sentencing hearing and that trial counsel failed to prepare the Petitioner to testify at the sentencing hearing. The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides

a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). However, we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

Alfonso C. Camacho v. State, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

The transcripts of the guilty plea submission and sentencing hearings belie the Petitioner's claim that his guilty pleas were not knowingly and voluntarily entered. Regarding the use of a knife during the offenses, the prosecutor described the Petitioner's use of a knife while providing a factual basis for the pleas, and the Petitioner did not object to her description of the facts. Additionally, the victim testified at the sentencing hearing that the Petitioner showed her the knife and pressed it against her side, although she admitted that she did not initially remember the knife until it was shown to her by an investigator. Furthermore, the Petitioner testified at the sentencing hearing that he had a knife on him and told the victim that he had a knife during the offenses. The Petitioner admitted at the post-conviction hearing that he knew prior to entering his guilty pleas that the victim had told the investigator that he had used a knife during the attack. Similarly, the Petitioner admitted that he told the investigator that he had a knife on his side during the attack.

Likewise, the record belies the Petitioner's claim that he was unaware that he could receive a total effective sentence greater than twenty years when he entered his guilty pleas. The trial court explained to the Petitioner that he was "entering a blind plea" and that it would determine the length of his sentences and whether they would be served consecutively at a later sentencing hearing. The Petitioner stated that he understood this.

The trial court also informed the Petitioner that the range of punishment for his convictions was between fifteen and sixty years with his offender classification to also be determined at the sentencing hearing. The Petitioner again stated that he understood. The Petitioner stated that he had reviewed the plea agreement forms with trial counsel, that he was freely pleading guilty, and that he was "[m]ore than satisfied" with trial counsel's performance. More importantly, the Petitioner testified at the sentencing hearing that he had instructed trial counsel to accept a plea agreement without an agreed upon sentence because he "didn't want to put [the victim] through anymore than what she had already been through." Accordingly, we conclude that the Petitioner failed to prove his factual allegation that his guilty pleas were not knowingly and voluntarily entered.

At the sentencing hearing, the State argued that the Petitioner was a Range II, multiple offender subject to a total effective sentence between fifty and eighty years. Trial counsel successfully argued that the Petitioner was a Range I, standard offender; argued for the application of two mitigating factors established by the Petitioner's testimony, which the trial court ultimately applied; and argued against the majority of the enhancement factors sought by the State and the imposition of consecutive sentencing. Trial counsel objected "strenuously" against the prosecutor's use of the Florida police reports during her argument. The majority of the facts described by the prosecutor were contained in the narrative of the Petitioner's presentence report. "Reliable hearsay" is admissible at a sentencing hearing as long as "the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted." Tenn. Code Ann. § 40-35-209(b). Presentence reports have long been held to be reliable hearsay. See State v. Baker, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997).

Moreover, the Petitioner has failed to establish that he was prejudiced by the prosecutor's use of the Florida police reports. The trial court did state that the Petitioner's Florida convictions were "very similar" to the instant offenses, that this was "of great concern to" it, and that this incident was "very close to what happened before, which [was not] a help to [the Petitioner] at all." However, the Florida police reports were not used to establish any of the enhancement factors that the trial court found. The trial court did find that the Petitioner was dangerous offender as a justification for imposing consecutive sentences. However, it was undisputed that the Petitioner was on probation for his Florida convictions when he committed these offenses, and only one of the grounds listed in Tennessee Code Annotated section 40-35-115(b) is needed to justify consecutive sentencing. Accordingly, we conclude that the post-conviction court did not err in denying post-conviction relief regarding trial counsel's conduct at the Petitioner's sentencing hearing.

-10-

**CONCLUSION**

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE